## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ACE AMERICAN INSURANCE
COMPANY,**

          Plaintiff,

v

**MCLAREN HEALTH CARE
CORPORATION,**

          Defendant.

Case No.:
Hon.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW COMES** Plaintiff, ACE AMERICAN INSURANCE COMPANY, a

corporation (hereinafter, "ACE"), and files its Complaint for Declaratory Judgment

against Defendant MCLAREN HEALTH CARE CORPORATION ("McLaren") as

follows:

## NATURE OF THE ACTION

1.     The dispute in this action involves a claim for indemnity arising out of

numerous personal injury causes of action filed against McLaren that were

coordinated with a larger consolidation of other litigated matters, not at issue here,

alleging certain claims involving personal injuries arising out of the conditions of

the water system in Flint, Michigan captioned, *In Re Flint Water Cases*, Case no.

5:16-cv-10444-JEL-MKM, and pending in the United States District Court for the

Eastern District of Michigan (the "Consolidated Action").

2.     The Consolidated Action coordinated numerous lawsuits filed against

McLaren alleging damages arising from Legionnaires' and lead contamination at

McLaren's property, the McLaren Regional Medical Center ("Medical Center") in

Flint, Michigan (collectively, the "Lawsuits") that are identified as follows:

| Name | Case | Caption | Court |
|------|------|---------|-------|
| Mark Runyan | *Dalrymple v. McLaren* | 17-108772-NO | Genesee County, MI |
| Betty Perdue | *Perdue v. McLaren* | 17-109339-NO-A | Genesee County, MI |
| Charles Tower | *Tower v. McLaren* | 17-109337-NO-J | Genesee County, MI |
| Teresa Darling | *Teresa Darling v. McLaren* | 17-109340-NO-J | Genesee County, MI |
| Connie Taylor | *Kidd v. McLaren* | 16-106517-NO | Genesee County, MI |
| Larry Balknight | *Kidd v. McLaren* | 16-106517-NO | Genesee County, MI |
| Sharon A. Hinze | *Hinze v. McLaren* | 17-108688-NO | Genesee County, MI |
| Dennis Baese | *Baese v. McLaren* | 16-107681-NO | Genesee County, MI |
| Gregory Clemons | *Clemons v. McLaren* | 17-109493-NO | Genesee County, MI |
| Patricia Schaffer | *Renaud/Schaffer v. McLaren* | 16-108271-NO | Genesee County, MI |
| Gradine Rogers | *Rogers v. McLaren* | 17-109338-NO-J | Genesee County, MI |
| Russell Hobson | *Hobson v. McLaren* | 17-109557-NO | Genesee County, MI |
| Arthur L. Percy | *Mulcahy v. McLaren* | 16-106517-NO | Genesee County, MI |
| Nelda Hunt | *Mulcahy v.* | 16-106517-NO | Genesee County, MI |

| | *McLaren* | | |
|---|---|---|---|
| Brian T. McHugh | *Derscha v. McLaren* | 17-108773-NO | Genesee County, MI |
| Forrest Mahan, Jr. | *Dalrymple v. McLaren* | 17-108772-NO | Genesee County, MI |
| Nyla Dalrymple | *Dalrymple v. McLaren* | 17-108772-NO | Genesee County, MI |
| Brian Kelsey | *Kidd v. McLaren* | 16-106517-NO | Genesee County, MI |
| Thomas Mulcahy | *Mulcahy v. McLaren* | 16-106517-NO | Genesee County, MI |
| Belvain Fuller | *Fuller v. McLaren* | 17-108886-NO | Genesee County, MI |
| Debra Kidd | *Kidd v. McLaren* | 16-106517-NO | Genesee County, MI |
| Peter Derscha | *Derscha v. McLaren* | 17-108773-NO | Genesee County, MI |
| Roy Marble | *Marble v. McLaren* | 2:17-cv-12942 | ED Mich. |
| Jeron Marble | *Marble v. McLaren* | 2:17-cv-12942 | ED Mich. |
| Theresa Marble | *Marble v. McLaren* | 2:17-cv-12942 | ED Mich. |
| Clayton E. Hollister | *Hollister v. McLaren* | 17-109854-NO | Genesee County, MI. |

3.     ACE agreed to provide a defense to McLaren for the Lawsuits subject to a full reservation of rights notice duly issued to McLaren.

4.     The Consolidated Action resolved the Lawsuits in addition to other claims not at issue in the subject action via a settlement agreement filed with the court on January 15, 2021 (the "Settlement Agreement") that required McLaren to contribute a total of $20,000,000 (the "Settlement") paid in two equal installments toward a total settlement fund of $641,000,000.

5.     On or about February 5, 2021, McLaren paid the initial installment of $10,000,000 toward the settlement fund.

6.   Under the Settlement Agreement, McLaren was required to make a second installment payment of $10,000,000 toward the settlement fund on or about October 21, 2021. However, 31 individual claimants with Legionella-based claims against McLaren opted out of the Settlement Agreement, McLaren exercised its right to reduce its compensation to the settlement fund to $5,000,000. The reduction was approved by the court and McLaren received a reimbursement of $5,000,000 on or about November 17, 2021.

7.   Subsequently, McLaren resolved all remaining Legionella claims for an additional $35,455,000 with payments of $55,000 on March 16, 2023, and $35,400,000 on December 26, 2023, for a total settlement of Legionella Claims for $40,455,000.

8.   On January 3, 2024, Genessee County Circuit Court Judge David Newblatt entered orders dismissing all claims against McLaren with prejudice, thereby concluding the Legionella Claim and related litigation.

9.   McLaren seeks indemnification for the Settlement under an insurance policy issued to it by ACE under policy number PPI G27 16884A 002 with a policy period of January 1, 2016, through January 1, 2019 (the "Policy").

10.   ACE denies that it owes McLaren a duty of indemnification.

11.   ACE seeks a declaration that it has no duty to indemnify McLaren for the Settlement under the terms of the Policy.

## PARTIES, JURISDICTION AND VENUE

12.     Plaintiff ACE is a Pennsylvania corporation and is authorized to conduct business in Michigan.

13.     Defendant McLaren is believed to be a Michigan corporation, with its principal place of business in Michigan, which may be served with citation and/or summons by service at One McLaren Parkway, Grand Blanc, Michigan 48439-4741.

14.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

15.     Venue is properly placed in this District and Division under 28 U.S.C. § 1391 as the Lawsuits and the Consolidated Action were venued in the County of Genessee because a substantial part of the events or omissions giving rise to the claim occurred in the County of Genessee.

## BACKGROUND AND FACTS

16.     ACE brings this claim for declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

17.     The Lawsuits were filed on various dates beginning on February 1, 2016 through March 15, 2017 against McLaren alleging personal injuries and/or death arising from a Legionnaires' outbreak in the water system at the Medical

Center. The Lawsuits generally claim that McLaren was aware there was an increase in the number of fatal and non-fatal cases of Legionnaires' Disease and that the increase coincided with the introduction of the Flint River water as a source of drinking water for the Flint population.

18.     The Lawsuits allege McLaren negligently failed to take proper steps to provide safe water at the Medical Center for its patients. It is further alleged that McLaren had sufficient knowledge of the risks associated with exposure to the legionella bacteria and deliberately failed to inform Medical Center patients of the serious risk of injury.

19.     The Lawsuits allege that McLaren conspired with public officials to conceal from the public, including the underlying plaintiffs, that persons had contracted legionella and died as a result while patients at the Medical Center and allege personal injury and emotional damages due to legionella as a result of the use and/or exposure to Flint River Water at the Medical Center.

20.     On or about February 24, 2017, ACE first received notification of the Lawsuits and that McLaren would be seeking a defense and indemnification under the Policy.

21.     On or about May 22, 2017, ACE agreed to provide a defense to McLaren subject to a full reservation of its rights.  A true and correct copy of the May 22, 2017 reservation of rights letter is attached hereto as Exhibit A.

22.    On or about September 18, 2017, ACE learned that McLaren first became aware of the legionella outbreak at the Medical Center in July 2014 prior to the inception of the Policy.

23.    On or about November 29, 2017, ACE supplemented its reservation of rights pertaining to McLaren's knowledge of the legionella outbreak prior to the inception of the Policy and requested additional documentation in support of ACE's investigation into McLaren's knowledge of the water conditions and legionella findings in 2014 and 2015. A true and correct copy of the November 29, 2017 updated reservation of rights letter is attached hereto as Exhibit B.

24.    On or about March 1, 2018, ACE supplemented its reservation of rights pertaining to McLaren's late notice which occurred approximately after a year following the filing of the first cause of action against McLaren on February 1, 2016 and requested additional documentation in support of ACE's investigation into McLaren's knowledge of the water conditions and legionella findings in 2014 and 2015. A true and correct copy of the March 2, 2018 reservation of rights is attached hereto as Exhibit C.

25.    On or about January 22, 2021, ACE supplemented its reservation of rights pertaining to Exclusion K for Known Conditions, Exclusion G based on misrepresentations made during the application and underwriting process, as well as

McLaren's failure to provide timely notice. A true and correct copy of the January 22, 2021 reservation of rights is attached hereto as Exhibit D.

26.     On or about January 15, 2021, ACE received a copy of the Settlement Agreement. A true and correct copy of the Settlement Agreement (without exhibits) is attached hereto as Exhibit E.

27.     The Settlement Agreement included a release for claims of both Legionnaires' disease and lead exposure.

28.     At no time prior to receiving the Settlement Agreement did McLaren ever notify ACE of any lead exposure claims.

29.     On or about February 15, 2021, ACE received a demand from McLaren that ACE "pay its $10M in policy limits immediately."

30.     On or about February 22, 2021, ACE reiterated its reservation of rights based on Exclusion K, Exclusion G and McLaren's failure to provide timely notice. A true and correct copy of the February 22, 2021 reservation of rights is attached hereto as Exhibit F.

31.     On or about March 6, 2024, ACE received a demand from McLaren that ACE "promptly reimburse [McLaren] for the Legionella Claim settlement, up to the amount remaining under the ACE Policy, . . . approximately $6,648,608.00."

32.     On or about April 12, 2024, ACE reiterated its reservation of rights based upon Exclusion K, Exclusion G and McLaren's failure to provide timely

notice. A true and correct copy of the April 12, 2024 reservation of rights is attached hereto as Exhibit G.

## APPLICATION AND THE POLICY

33.    On or about December 11, 2012, McLaren completed an application for a Premises Pollution Liability Portfolio Insurance Policy ("Application"). A true and correct copy of the Application is attached hereto as Exhibit H.

34.    McLaren answered in the negative to all of the following questions posed in the Application:

> 16.    At the time of signing this application, is the Applicant of another     party to the proposed insurance aware of any circumstances that may   reasonable be expected to give rise to a claim against the Applicant   or   any   other   party   to   the proposed insurance from the release of        pollutants  or  from a facility-borne illness event?

> 28.    Have any of the building located at the proposed covered locations    ever  been  identified  as  having  mold,  fungi, *legionella pneumophila*,  or similar bacteria-related problems?
> 33.    Have any health concerns been identified by, or any claims been  made against, the Applicant or any other parties to the proposed   insurance   with   respect   to   mold,   legionella pneumophila, similar bacteria-related issues or any other indoor air quality-related issues at buildings located on any of the proposed covered locations?

> 36.    Have any of the buildings located at the proposed covered locations ever been identified as having a facility-borne illness problem?

> 37.    Have any health concerns been identified by, or any claims been  made against, the Applicant or any other parties to the

proposed insurance with respect to a facility-borne illness at building located     on any of the proposed covered locations?

35.     On each page of the Application on which the questions identified in paragraph 24 appeared, the Application states:

IT IS UNDERSTOOD AND AGREED THAT IF ANY SUCH CLAIMS EXIST, OR ANY SUCH FACTS OR CIRCUMSTANCES EXIST WHICH COULD GIVE RISE TO A CLAIM, THEN THOSE CLAIMS AND ANY OTHER CLAIMS OR COSTS ARISING FROM SUCH FACTS OR CIRCUMSTANCES ARE EXCLUDED FROM THE PROPOSED INSURANCE UNLESS OTHERWISE AFFIRMATIVELY STATED IN THE POLICY.

36.     By executing the Application, McLaren warranted the statements provided therein as follows:

BY SIGNING THIS APPLICATION, THE APPLICANT WARRANTS TO THE INSURER THAT ALL STATEMENTS MADE IN THIS APPLICATION, INCLUDING ANY STATEMENTS THERETO, ABOUT THE APPLICANT AND ITS OPERATIONS ARE TRUE AND COMPLETE, AND THAT NO MATERIAL FACTS HAVE BEEN MISSTATED IN THIS APPLICATION OR CONCEALED…

37.     In or around December 2015, McLaren submitted the Application in support of the underwriting process for the Policy.

38.     Based on the statements asserted in the Application, ACE issued a Premises Pollution Liability Portfolio Insurance Policy, bearing No. PPI G2716884A 001 to named insured "McLaren Health Care Corporation" for the

policy period of January 1, 2016 through January 1, 2019. A true and correct copy of the Policy is attached as Exhibit I.

39.     Subject to its terms, conditions and exclusions, the Policy provides insurance coverage in the amount of $10,000,000 per pollution condition or indoor environmental condition with a $13,000,000 total policy and program aggregate limit of liability for all pollution condition and indoor environmental condition subject to a $50,000 self-insured retention.

40.     Due to the defense fees incurred to date, the remaining limit on the Policy is approximately $6,645,608.

41.     The ACE Policy provides in relevant part:

I.      INSURING AGREEMENT
        Solely to the extent that the coverages below are identified on the Declarations to this Policy as being underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured" for "loss", in excess of the "self-insured retention" or deductible period (as applicable), resulting from:

        C.      THIRD-PARTY CLAIMS COVERAGE (Coverage C.)
                "Claims" arising out of a "pollution condition" or any "indoor environmental condition", provided the "claim" is first made during the "policy period".  Any such "claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

                The coverage afforded pursuant to this Coverage C. only applies to "pollution conditions or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item 5. of the

Declarations, if applicable, and prior to the expiration of the "policy period."

V.   DEFINITIONS

J.   "Claim" means the written assertion of a legal right received by the "insured from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage" or "remediation costs" arising out of "pollution conditions" or "indoor environmental conditions" to which this insurance applies.

Z.   "Indoor environmental condition" means:

1.   The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or
2.   The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure,

provided that such "fungi" or *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

DD.   "Loss" means:

Coverage C.

7.   A monetary judgment, award or settlement or compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated punitive,    exemplary    or    multiplied damages, and civil fines, penalties    and assessments:
a.   Are insurable under applicable law; and
b.   Arise out of a "pollution condition" or "indoor    environmental condition" that results

in "bodily injury", "property damage" or "first-party remediation costs" to which this insurance otherwise applies; and

8. Associated "legal defense expense".

LL. "Pollution condition" means:

1. "Illicit abandonment"; or

2. The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

PP. "Responsible person" means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", or any "key executive" of, officer or director of, or partner in, an "insured".

VI.   EXCLUSIONS

G.   Fraud or Misrepresentation

"Loss" arising out of or related to:

1. Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

a. Within an Application to this Policy: or

b. During the Application or underwriting process prior to the inception date of this Policy, which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declaration to this Policy; or

2. Fraudulent acts or material misrepresentation on the part of any "responsible person" during the "policy period".

K. Known Conditions

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" in existence and reported to a "responsible person":

1. Prior to the "policy period"; or

2. Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item 2. of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",

and not affirmatively disclosed to the Insurer in an Application or supplemental underwriting materials provided to the Insurer to secure coverage for such "covered location" pursuant to this Policy.

VI. REPORTING AND COOPERATION

A. Without limiting the specific requirements contained in any Insuring Agreement or any other exposure-specific reporting requirements contained within this Policy, the "insured" shall also see to it that the Insurer receives notice of any "claim" or "first-party claim", as soon as practicable…

B.    The "insured" must:

1.    As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in   connection with any "claim"

42.    Due to McLaren's failure to comply with the terms and conditions in the ACE Policy by providing notice, ACE seeks a declaration that it has no duty to indemnify McLaren for the Settlement.

## COUNT I: NO DUTY TO INDEMNIFY DUE TO KNOWN CONDITIONS

43.    ACE realleges and incorporates the allegations contained in paragraphs 1 through 42 as though fully set forth herein.

44.    Exclusion K precludes coverage for loss arising out of or related to "pollution conditions" or "indoor environmental conditions" that were in existence prior to the policy period and reported to a responsible person and not disclosed in an application for insurance.

45.    The Policy includes *legionella pneumophila* in a building or structure as an "indoor environmental condition."

46.    Lead contamination is a "pollution condition" under the Policy.

47.    McLaren had knowledge of legionella contamination at its Medical Center as early as July 2014 which is prior to the inception of the Policy.

48.     McLaren had knowledge of lead contamination at its Medical Center when it began lead testing in or around October 2015 which is prior to the inception of the Policy.

49.     The legionella and lead contamination at the Medical Center was reported to Henry Lobb, a "responsible person", prior to the inception of the Policy.

50.     The legionella and lead contamination at the Medical Center was not disclosed in the Application.

51.     McLaren's knowledge of the legionella and lead contamination at the Medical Center prior to the policy period and its failure to disclose such contamination in the Application voids ACE's indemnification duty under the Policy and therefore ACE has no duty to indemnify McLaren for the Settlement reached in the Consolidated Action pertaining to the Underlying Lawsuits.

## COUNT II: NO DUTY TO INDEMNIFY DUE TO FRAUD OR MISREPRESENTATION

52.     ACE realleges and incorporates the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53.     Exclusion G precludes coverage for loss arising out of or related to material misrepresentations made within the Application to the Policy or during the application or underwriting process prior to the inception date of the Policy.

54.     McLaren affirmatively answered in the negative the following question contained in the Application:

16.     At the time of signing this application, is the Applicant of another     party to the proposed insurance aware of any circumstances that may   reasonable be expected to give rise to a claim against the Applicant   or any   other party to the proposed insurance from the release of         pollutants or from a facility-borne illness event?

55.     McLaren affirmatively answered in the negative the following question contained in the Application:

28.     Have any of the buildings located at the proposed covered locations   ever been identified as having mold, fungi, *legionella pneumophila*,   or similar bacteria-related problems?

56.     McLaren affirmatively answered in the negative the following question contained in the Application:

33.     Have any health concerns been identified by, or any claims been  made against, the Applicant or any other parties to the proposed   insurance   with   respect   to   mold,   legionella pneumophila, similar     bacteria-related issues or any   other indoor air quality-related issues         at buildings located on any of the proposed covered locations?

57.     McLaren affirmatively answered in the negative the following question contained in the Application:

36.     Have any of the buildings located at the proposed covered locations   ever been identified as having a facility-borne illness problem?

58.     McLaren affirmatively answered in the negative the following question contained in the Application:

> 37.    Have any health concerns been identified by, or any claims
> been  made  against,  the  Applicant  or  any  other  parties  to  the
> proposed     insurance with respect to a  facility-borne illness at
> building located     on any of the proposed covered locations?

59.    In the Application, McLaren acknowledged that "if any such claims

exist, or any such facts or circumstances exist which could give rise to a claim" then

those claims are excluded from the coverage benefits of the Policy. *See* Exhibit H.

60.    McLaren  affirmatively  warranted  that  all  statements  made  in  the

Application were true and complete that that no material facts have been misstated

or concealed.  *See* Exhibit G.

61.    The misrepresentations made in the Application were material in that

ACE either would not have issued the Policy, would not have issued the Policy at

the same premium rate, would not have issued the Policy in as large an amount, or

would not have provided coverage with respect to the hazard resulting in the subject

loss if the true facts had been made known to ACE as required by the Application.

62.    McLaren's  misrepresentations,  omissions,  and  concealment  of  fact

concerning the legionella and lead contamination at the Medical Center prior to the

policy period and its failure to disclose such contamination in the Application voids

ACE's  indemnification  duty  under  the  Policy  and  therefore  ACE  has  no  duty  to

indemnify  McLaren  for  the  Settlement  reached  in  the  Consolidated  Action

pertaining to the Underlying Lawsuits.

## COUNT III: NO DUTY TO INDEMNIFY DUE TO COMMON LAW KNOWN LOSS, LOSS IN PROGRESS AND FORTUITOUS LOSS DOCTRINES

63.     ACE realleges and incorporates the allegations contained in paragraphs 1 through 62 as though fully set forth herein.

64.     Under common law known loss, loss in progress and fortuity doctrines, an insured cannot obtain insurance coverage for those losses, damages and claims that it knows about, plans for or is aware of when an insurance policy is issued.

65.     Long-standing principles of common law limit insurance coverage to fortuitous losses such that insurance coverage is not available to known losses, damages and claims.

66.     The bodily injury losses, damages and claims alleged in the Lawsuits and released in the Settlement Agreement were not fortuitous.

67.     Prior to the inception of the Policy, McLaren knew or should have known that it had engaged in conduct prior to the inception of the Policy, for which liability was substantially probable to result or that bodily injury losses, damages and/or claims alleged in the Lawsuits or released in the Settlement Agreement, had been asserted prior to the inception of the Policy or that the bodily injury losses, damages and/or claims were already in progress prior to the inception of the Policy.

68.     The common law known loss, loss in progress and fortuity doctrines preclude coverage for the Settlement under the Policy.

## COUNT IV: NO DUTY TO INDEMNIFY DUE TO LATE NOTICE

69.     ACE realleges and incorporates the allegations contained in paragraphs 1 through 68 as though fully set forth herein.

70.     Under Michigan law, an insurer prevails on a coverage defense based upon an insured's failure to timely afford notice of a claim when it can show that it was prejudiced by the lack of timely notice.

71.     Here it is undisputed that McLaren failed to provide notice of the claim and the Lawsuits for a full year after the first lawsuit was filed.

72.     McLaren did not provide notice of lead-based claims at any time prior to the filing of the Settlement Agreement in January 2021.

73.     ACE was prejudiced by McLaren's late notice in that the late notice materially impaired ACE's ability to contest its liability to McLaren and materially impaired ACE's ability to participate in the defense of McLaren and contest the liability of McLaren in the Lawsuits.

74.     McLaren's failure to provide timely notice voids coverage under the ACE Policy, and ACE therefore has no duty to indemnify McLaren for the Settlement reached in the Consolidated Action pertaining to the Underlying Lawsuits.

## COUNT V: RESTITUTION

75.     ACE realleges and incorporates the allegations contained in paragraphs 1 through 74 as though fully set forth herein.

76.     ACE is currently providing a defense to McLaren in connection with the Lawsuits pursuant to a full reservation of rights notice duly issued on behalf of ACE.

77.     ACE's reservation of rights notice informed McLaren of the possibility that ACE may disclaim coverage.

78.     ACE has determined there is no duty to provide a defense or indemnification in connection with the claims stated in the Lawsuits because of known losses as well as breaches of various conditions to coverage.

79.     As there is no coverage available under the Policy for the claims alleged in the Lawsuits, ACE is entitled to restitution of its attorneys' fees and costs associated with the defense of McLaren in the Lawsuits.

80.     ACE has no other adequate remedy at law.

81.     ACE is entitled to a declaration the McLaren owes restitution and must reimburse ACE for the attorneys' fees and costs incurred in the defense of the Lawsuits.

## CLAIM FOR RELIEF ON ALL COUNTS
**(Declaratory Relief - No Duty to Indemnify)**

ACE realleges and incorporates the allegations contained in paragraphs 1 through 81 as though fully set forth herein.

82.     McLaren's knowledge of legionella and lead contamination prior to the inception of the Policy, misrepresentations made in the Application and failure to provide timely notice of the Lawsuits and/or lead-based claims are fatal to any demand for indemnification of the Settlement and negate any duty of defense, and ACE therefore has no duty to indemnify McLaren for the Settlement entered in the Consolidated Action and is entitled to restitution for the defense fees and costs incurred to date.

83.     Upon information and belief, McLaren disputes the contentions of ACE as set forth herein or contends otherwise.

84.     There exists a real, actual and justiciable controversy between ACE and McLaren.

85.     A judicial determination of the rights and duties of the parties under the ACE Policy with respect to the indemnification of the Settlement entered in the Consolidated Action is necessary and proper.

86.     The parties have no other adequate remedy at law than to have their rights and duties determined as set forth herein.

WHEREFORE, Plaintiff, ACE AMERICAN INSURANCE COMPANY, respectfully requests that this Honorable Court enter judgment in its favor and against Defendant, McLaren Health Care Corporation, finding and declaring:

A.  ACE has no duty to indemnify McLaren in connection with the Settlement.

B.  ACE has no liability of any kind to McLaren under the ACE Policy in connection with the Lawsuits, the Settlement or the Consolidated Action.

C.  ACE shall recover the costs and reasonable attorney fees it expended for the defense of the Lawsuits;

D.  ACE be awarded its costs of court; and

E.  ACE be awarded such other and further relief to which it may be entitled, at law or at equity.

Respectfully submitted,

/s/ Corinne F. Shoop
CORINNE F. SHOOP (P38145)
**GREGORY, MEYER & CHAPNICK, P.C.**
Attorneys for Plaintiff Ace American Insurance Company
340 E. Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920/(248) 689-4560 -Fax
cshoop@gregorylaw.com

and

/s/ Danny L. Worker
DANNY L. WORKER
**CLYDE & CO, US LLP**
Attorneys for Plaintiff Ace American
Insurance Company
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606
312-635-70000
Dan.Worker@clydeco.us

/s/ Ron W. Payne
RON W. PAYNE
**CLYDE & CO, US LLP**
Attorneys for Plaintiff Ace American
Insurance Company
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606
312-635-7000
Ron.Payne@clydeco.us

Dated: February 11, 2025